BENNETT *v.* WESTERN UNDERWRITERS' ASS'N.

FIRE INSURANCE—REMOVAL OF INSURED PROPERTY—CONSENT OF AGENT.
  Where application is made to an agent of an insurance company for permission to remove insured property to another location, and the agent promises to make the transfer, and the jury find that the transfer was made out before the fire, but not delivered or attached until after the fire, when the person to whom the application was made was no longer agent of the company, liability of the company cannot be escaped, notwithstanding a provision in the policy that no agent shall have power to grant the permit except by a writing indorsed upon the policy.[1] GRANT, J., dissenting.

Error to Wayne; Rohnert, J. Submitted January 28, 1902. (Docket No. 78.) Decided March 26, 1902.

*Assumpsit* by Ira B. Bennett against the Western Underwriters' Association on a policy of insurance. From a judgment for plaintiff, defendant brings error. Affirmed.

*Stevenson & Butzel,* for appellant.

*Bowen, Douglas & Whiting,* for appellee.

HOOKER, C. J. The plaintiff was insured in the defendant company, and has brought an action upon the policy to recover for a loss by fire. His policy was a Michigan standard policy, and contained the following provisions:

"All while contained in the two-story, shingle-roof, frame building and additions, adjoining and communicating, occupied only as a dwelling, and not elsewhere, and situated at number 140, north side of Willis avenue, between Second and Third avenues, Detroit, Michigan.
* * *

---

[1] For location of movable property as affecting insurance thereon, see note to *Benton* v. *Farmers' Mut. Fire-Ins. Co.,* ( Mich.) 26 L. R. A. 237.

" This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto, and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto; and, as to such provisions and conditions, no officer, agent, or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

On the 2d day of May the plaintiff had a talk by telephone with the local agent of the defendant company with reference to the transfer of the insurance to a different locality to which he had removed or was removing. They do not agree about this conversation. The plaintiff testified that he then informed the agent that he had moved or was moving his stock to another location, and wanted him then and there to transfer the insurance to the new locality, and was assured that he would do so, and would make a memorandum of the transfer at that time. The witness stated that he said to the agent:

" ' I want you particularly to make this transfer today,' and I was very emphatic that he transfer it today; and he said he would do so, and that I could have the permit at any time that I would bring over the policy."

It is admitted that plaintiff had the policy in his possession. The policy was brought to the agent on the 21st day of May, the property having burned on May 19th; and the agent stepped into the next room and brought the permit, which he attached to the policy. On cross-examination he testified that: "I asked him if he would do it at that time, and he said he would. He said, 'It is transferred now,' "—and that the agent afterwards told him that he entered it on his books at that time, and that he did not know, of his own knowledge, whether the transfer was made on the books at that time or not.

The jury found from the testimony that the permit was made and held for the plaintiff before the fire. This they might do from the statements made by the agent at the time the transfer was agreed upon, which was part of a transaction within the power of the agent, *i. e.*, to consent to the transfer, and plaintiff's version of what occurred when the permit was attached to the policy. If it is true that the agent and the plaintiff agreed upon a written permit, and the same was actually made at the time in consideration of the promise to pay an additional premium, and the permit was held for the plaintiff, who was to call for it, although the policy itself was not present, and the permit was therefore not attached to it, the company cannot escape liability upon the ground that the consent had not been given in technical compliance with the contract. It was a substantial compliance, and not dissimilar from a case where the permit is filled out and signed by the agent, and given to the policy holder to attach. Presumptively, these permits are printed and furnished by the company to be used in place of formal writings upon the policies. The case is within the rule of *Pollock* v. *Insurance Co.*, 127 Mich. 460 (86 N. W. 1017). We consider the other questions raised technical and unimportant.

The judgment is affirmed.

MOORE and MONTGOMERY, JJ., concurred with HOOKER, C. J.

GRANT, J. (*dissenting*). I am of the opinion that, under the plaintiff's own testimony, he is not entitled to recover. He knew the condition of his policy, and that it would be void unless he had the written assent to the transfer either indorsed upon or attached to the policy. He attempted notwithstanding to make a transfer by parol over the telephone. His testimony amounts to no more than a promise on the part of Mr. Macklem, the agent, that he would make the transfer. His statement that Mr. Macklem said, "It is done now," is, of course, untrue, because it had not then been done, for that was the

first time he had spoken to Macklem about it. Plaintiff knew that he should either procure the written permit and attach it to his policy, or that he should take the policy to Mr. Macklem and have it attached. He did neither, and with the full knowledge of the consequences. That which this provision of the policy intended to avoid has happened, viz., the entire matter rests in parol. Mr. Macklem and his clerk swear that the permit was not made out until May 21st, when plaintiff brought his policy to have the permit attached. Plaintiff does not swear that the permit was not written out at that time. He says:

"I asked him if he had that permit, and he said that he had; and he stepped into the next room and brought me back this permit, which he attached to the policy."

Mr. Macklem testified that he told him that the permit then would do him no good,—"that it looks to me like boys' play,"—and told him that it was done at his (plaintiff's) risk. Mr. Macklem at that time had ceased to be the agent of the defendant.

This is a standard policy, approved by State authorities. Its very purpose was to avoid contracts and changes therein resting in parol. To hold this policy valid results, in my judgment, in saying that the words "written upon or attached to" are of no use. It thwarts the very purpose of the provision.. I think the judgment should be reversed.

Long, J., did not sit.