## MARYLAND CASUALTY CO. v. FIRST NAT. BANK OF ATLANTA, TEX.

### No. 7922.

Circuit Court of Appeals, Fifth Circuit.

March 19, 1936.

Rehearing Denied April 16, 1936.

WALKER, Circuit Judge, dissenting.

Rollin W. Rodgers, of Texarkana, Tex., for appellant.

Hugh Carney, of Atlanta, Tex., for appellee.

Before FOSTER, HUTCHESON, and WALKER, Circuit Judges.

HUTCHESON, Circuit Judge.

On December 9, 1933, appellant, in consideration of a premium of $128.80, issued its policy insuring appellee against loss by burglary and by robbery in the sum of $10,000, from January 9, 1934 noon, to January 9, 1935 noon. On or about February 1, 1934, after the policy had been in effect thirty days, defendant's agent, the one who had procured appellee to write the policy, as an entirely new matter and not in any wise pursuant to any agreement made when the policy was written, presented appellee's cashier with this rider[1] for attachment to

---

[1] Exhibit A

For Attachment to A.B.A. Standard Form Bank Burglary and Robbery Policy Endorsement Limiting Coverage on Money Not Under Protection of Time Lock.

(Which shall only be effective on and after date hereof)

Date, January 9, 1934

It is hereby agreed that the Company's liability for loss of money as insured under Paragraph II of the Policy of which this endorsement forms a part is limited to fifteen per centum (15%) of the amount of insurance applicable under said Paragraph II as specified in Section (i) of Condition R of said Policy, if loss thereof is occasioned by robbery as defined in the Policy, when such property is located within the Assured's premises but not within a vault, safe, chest or similar receptacle locked by time lock at the beginning of such robbery provided that the foregoing limitation shall not apply to such a loss:

(a) occurring at any time when at least two employees or guards equipped with loaded firearms are stationed at each unlocked entrance door to the premises:

(b) of money unexpectedly received if placed within a vault, safe, chest or similar receptacle locked by combination lock not later than fifteen minutes subsequent to the receipt thereof and which money at the first opportunity shall be placed under the protection of a time lock or protected as required by subdivision (a) of this indorsement.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the Policy except as hereinabove set forth.

Attached to and forming a part of Burglary Policy No. 62-000908 expiring January 9, 1935 issued by the Maryland Casualty Company of Baltimore, Md. to First National Bank of Atlanta, State of Texas.

This endorsement is hereby agreed to and accepted by

F. Highlands Burns, President
Countersigned by
W. F. Cameron Ins. Agency,
(Signed)   Authorized Agent

First National Bank,
by R. P. Dunkin, Cashier,
(Assured)   (Signed)

the policy. In doing so he, in good faith believing he was correctly ·interpreting it, represented that the rider had no effect but to reduce to 15 per cent. the coverage on counter money, that is money kept out of the safe for use during banking hours, and to require the bank to keep two armed employees. Relying on that representation and induced by it to do so, the cashier accepted the rider and attached it to the policy believing it effected a change in the coverage as to counter money only. On June 6, 1934, between the hours of 2:30 p. m. and 2:45 p. m. while the bank was open for business and the safe was not time locked, the bank was robbed of $5,025.93 in money and securities to the value of $2,525, a total loss of $7,550.93. Of the money, $4,229 was taken from the safe, and $796.93 from the counter.

Appellant admitted its liability for the securities, but claimed that, since the robbery had occurred while the safe was not time locked, under the rider its liability was only $1,500, 15 per cent. of the total policy coverage of $10,000. Appellee brought this suit on the policy claiming full coverage. It pleaded, as to the rider, that its attachment was ineffective for want of consideration, and because its meaning and effect had been misrepresented to it by appellant's agent. It pleaded that because of that misrepresentation as to its meaning and effect there was no meeting of the minds and no contract as to the rider. It further pleaded that if there was a meeting of the minds and a contract was formed by attaching the rider it was not the one stated in it, but the one which the parties agreed they were making and the rider should be reformed to speak that meaning.

The evidence was without conflict. It showed that in December, 1933, appellee had a policy of insurance with another company, expiring January 9, 1934, which insured it against loss by robbery up to $10,000. That at appellant's earnest solicitation through its local agent and upon its urging that the contract it offered was and would be the same as the one the bank had, appellee agreed to take appellant's contract, and on January 9 lapsed the contract it had formerly had. That on December 18, 1933, appellant sent the same local agent the rider form in question, with a covering letter reading as follows:

"December 18, 1933.
"W. F. Cameron Insurance Company,
 "Atlanta, Texas.
"Gentlemen:
 "Re #62–000908 First National Bank.
 "We have recently forwarded the above policy to you, issued in accordance with application submitted by Mr. Warner, the insurance being effective January 9, 1934.
 "Our Company is now requiring attachment of the enclosed endorsement to all Bank Policies in Texas, restricting coverage on money not under time lock protection to 15% of the total Robbery Insurance carried.
 "The endorsement is enclosed in triplicate and we shall appreciate it if you will have the original signed and attached to the policy, one extra copy signed by the bank and returned to us, the other copy being for your records.
 "Your prompt attention to delivering the endorsement and furnishing a copy for our records with signature of the bank will be greatly appreciated.
 "Yours very truly,
            "Black Rogers & Co. Ltd.
"DD/FF        Mngr. Cas. Dept."

That on January 3d appellant called the agent's attention to the rider and asked that he place the original on the policy and return the copy to it. The agent testified that believing that the rider applied only to counter money, that is, money kept on the counter for use during banking hours and that it limited liability for that kind of money only, to $1,500, he took the rider to the bank, he told the bank's cashier that that was its effect. The cashier testified that relying on that statement, and only casually reading it, he allowed the original rider to be attached and signed the copy for return to appellant.

The bank would not have accepted the rider or have allowed it to be attached if it had not understood its effect to be as appellant's agent said. If its attention had been called to it and it had been advised of appellant's claim, it would either have paid appellant the additional premium $85 required to obtain full coverage, or would have written the insurance in another company. It was not intending to insure its moneys; it would not have insured them for $1,500, the small coverage the rider called for. In writing to its agent inclosing the rider, appellant said nothing about canceling the policy if the rider was not ac-

cepted, or requiring an additional premium for full coverage. Nothing about this was said by the agent to appellee. Indeed, nothing was said or done except as herein set out.

The District Judge heard first the equitable plea of mutual mistake. He found that the rider had been attached and accepted under and as the result of mutual mistake induced by the agent's innocent misrepresentation and that it therefore never became a part of the contract. He found, too, an entire absence of consideration for its execution. He gave judgment on the policy without regard to the rider.

Appellant here, complaining of this judgment, insists that there was no mutual mistake, because, though the appellee and its agent may have been mistaken as to the meaning and effect of the rider, the mutual mistake which alone gives relief must be that of the two principals, not that of one principal and the agent of another. It insists, too, that though without any reduction or concession in the cost, or otherwise it reduced to 15 per cent. the original full coverage appellee had paid for, there was consideration for the rider, in that the company could have, but did not, cancel the policy, on thirty days' notice.

We do not think so. We think the District Judge was right in holding that there was no consideration for attaching the rider. Nothing was said to appellee about canceling the policy. After the rider was executed, the privilege of cancellation still remained. Nothing whatever was offered or given to appellee to induce the change. There was merely a statement of the agent's view that the rider affected counter money only, coupled with the request that such rider be attached. The rider, as appellant construes it, is wholly different from the rider the agent and the bank agreed to attach. It is a complete abrogation of the greater part of the coverage of the contract appellant had agreed to give and had given.

We think it plain that there was no consideration and that the rider fails as an agreement. 13 Corpus Juris, 592; Titus v. Whiteside (D.C.) 228 F. 965; Stone v. Morrison & Powers (Tex.Com.App.) 298 S.W. 538; Bassi v. Springfield Fire & Marine Ins. Co., 57 Cal.App. 707, 208 P. 154; Maine Street & A. P. R. Co. v. Los Angeles Traction Co., 129 Cal. 301, 61 P. 937, 938. In the last-cited case it was said: "There can be no doubt of the principle contended for by the appellant, that an agreement adding to the terms of an existing agreement between the same parties, and by which new and onerous terms are imposed upon one of the parties without any compensating advantage, requires a consideration to support it."

Besides, this modification was effected by a misrepresentation, though innocently made, so that appellant's insistence that though by the rider it obtained everything and appellee nothing, the consideration is to be found in the mutual promises contained in the acceptance by the parties of the rider, will not avail it here, for the minds of the parties did not meet. There was here no promise for a promise. Appellant was proposing one modification; appellant's agent and appellee had quite another in mind. Questions of consideration apart, we think the rider ineffective as a modification of the contract, and that the original policy stands unaffected by it.

The judgment below was right. It is affirmed.

WALKER, Circuit Judge, dissents.

On Petition for Rehearing.

PER CURIAM.

As neither of the judges who concurred in the judgment of the court in the above numbered and entitled cause is of the opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same is hereby, denied.